RAÚL MALDONADO, Plaintiff and Appellant, v. INSULAR RACING COMMISSION OF PUERTO RICO ET AL., Defendants and Appellants.

No. 9006. Argued November 9, 1944.—Decided February 2, 1945.

*Diego O. Marrero* for appellants. *Celestino Iriarte, F. Fernández Cuyar,* and *H. González Blanes* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

Raúl Maldonado Rodríguez was suspended by the Jury of the Racing Parks of Puerto Rico from service as jockey for three months because of alleged negligence in the manner in which he raced a horse in the first race on February 16, 1944, in Las Monjas Racing Park. After a hearing, the District Court of San Juan granted a petition for injunction filed by the jockey Maldonado enjoining the defendants, the Insular Racing Commission, and the jury, from carrying into effect the suspension decreed. The defendants allege in this appeal that the lower court erred in deciding that the jury did not comply with the provisions of subdivision H of Rule 96 of the Racing Commission; in deciding that the Chairman of the Jury, Dr. Juan Font Suárez, when testifying as a witness in the investigation of the case failed to do so under oath because he did not take it before any of the persons authorized to administer oaths; in deciding that the summons directed by the jury to the appellee did not state any fact from which the appellee could defend himself, and in imposing costs on the appellants and $50 for attorney's fees.

Construing the scope of subdivision H of Rule 96 of the Insular Racing Commission [1] in *Hernández* v. *Insular Racing Commission*, 50 P.R.R. 96, 99, we stated the following:

"We agree that it was not the intention of the framers that all the solemnities of a trial should be observed. A jury of a racing park is not qualified to carry out a complete trial. We are quite sure that a great deal less formality is required. We think it might be enough if the witnesses and the offender were summoned, sworn and examined in an informal way and the jockey given an opportunity to call other witnesses, perhaps some of the other jockeys in the race."

[1] Subdivision H of Article 96 of the Regulations, Rules, and Conditions adopted by the Insular Racing Commission of Puerto Rico reads thus: "Before imposing any penalty, it (the jury) shall carry out, as far as possible, an investigation of the acts complained of, taking all testimony under oath and giving the offender an opportunity to be heard in his defense."

Based mainly on this decision, the lower court held that in the case at bar the evidence showed that the jury had not complied with the requirements provided by subdivision H of Rule 96, *supra,* first, because when Dr. Juan Font Suárez, Chairman of the Jury, testified in the investigation carried out by him he did not take an oath; second, because prior to the hearing Dr. Font Suárez took the testimony of several persons who were not summoned and who did not testify under oath at the investigation before the jury, depriving the appellee of his right to hear and cross-examine said persons and, third, because the summons served on the jockey Maldonado did not specify any fact from which he could defend himself.

It appears from the evidence that, although in the investigation carried out by the jury the formality of making Dr. Font Suárez raise his hand and swear to tell the truth when testifying before another member of the jury was not strictly complied with, he expressly stated before said jury that his testimony was given under oath. Dr. Font Suárez, as well as Mr. Luis Bigles, a member of the jury, stated that the former had testified before the latter, under oath, inasmuch as the practice followed by said body was to inform the witnesses when testifying during the investigation that their testimony was under oath, and that the jockey Maldonado himself had testified in this manner.

Our statutes contain no provision as to any special form for administering or taking an oath.[2] The assertion by Dr.

---

[2] On the contrary, § 118 of the Penal Code, appearing in the chapter which deals with perjury, provides as follows:

"§118.—(119 Cal.) OATH, DEFINED. The term 'oath', as used in the preceding section, includes an affirmation and every other mode authorized by law of attesting the truth of that which is stated.

"FORM OF. That mode of swearing which the witness believes most obligatory may be adopted. *No special form of oath or affirmation is required.*" (Italics ours.)

And the preceding Section provides in part that "It is no defense to a prosecution for perjury that the *oath was administered or taken in an irregular manner.*" (Italics ours.)

Font Suárez that his testimony was under oath, made before Mr. Bigles, who as member of the jury was authorized to administer oaths pursuant to § 18 of the Insular Racing Act, is in our opinion sufficient to establish the fact that Dr. Font Suárez testified under oath.

As to the summons served on the appellee to appear at the investigation before the jury, there is no special form provided by subdivision H of Rule 96, *supra,* and the one issued herein stating that he was summoned ''in order to hold a hearing in the proceeding instituted against you for violation of Article 249 of the Regulations, which violation consists in negligence on your part when racing the horse Caridulce in the first race held on February 16, 1944, . . .'' and that he could appear ''with any evidence which he deemed pertinent to submit to the jury for his defense,'' was sufficient to inform the appellee of the violation charged against him.

In our opinion the lower court erred as to the first and third grounds assigned but not so as to the second which sufficiently upholds the judgment tendered in view of our ruling not only in *Hernández* v. *Insular Racing Commission, supra,* but also in *Sifre* v. *Pellón,* 54 P.R.R. 559, and *Romany* v. *Race Track Jury,* 55 P.R.R. 317. The evidence shows that prior to the official hearing held by the jury, Dr. Font Suárez made a private investigation and questioned different persons as to the manner in which the petitioner had behaved in the first race on February 16, 1944. From the testimony of Dr. Font Suárez we take the following:

''Q. Who else testified besides jockey Maldonado?
''A. Personally of course I made. . .
''Q. What other witnesses?
''A. I made outside investigations with racing fans.
''Q. Whom did you examine?
''A. Different racing fans.
''Q. For example, who?
''A. I really can not remember names.

"Q. Mention one of the persons whom you examined?

"A. I don't know his name, Mr. Goyo, a shoemaker at Stop 17.

"Q. Did you investigate him in connection with the jockey's conduct?

"A. Yes, sir.

"Q. What other persons did you investigate?

"A. I examined a gentleman who works in the Light Company who goes very often to the stables.

"Q. What is his name?

"A. His first name is Victoriano but I don't know his last name.

"Q. Was it all concerning the jockey, or whether the jockey had raced the horse negligently?

"A. The conduct of the jockey, the other was later.

"Q. The jockey's conduct as to whether or not he had raced the horse negligently?

"A. Well, of course.

"Q. I am asking you whether it was in connection with the jockey?

"A. In connection with the jockey's conduct at the race.

"Q. In other words, whether he had raced the horse irregularly?

"A. I wanted their opinion.

"Q. Did you examine anyone else, did you investigate any other person?

"A. Well, I have already mentioned two persons.

"Q. What other persons?

"A. Other persons.

Even though at the beginning Dr. Font Suárez denied that the information which he obtained privately from certain persons, as to the manner in which the appellee acted during the first race being investigated had influenced his opinion when deciding as a juror the case against the appellee, afterwards in his testimony he admitted that: "Of course, I want to explain that the investigation which I carried out with those persons was made personally by me in order to ratify or change my opinion." And upon being asked "Your opinion as to whether or not the jockey has raced negligently?" he answered in the affirmative.

There is no doubt that since Dr. Font Suárez was the only witness who testified against the appellee at the inves-

tigation he did so with a prejudiced mind regarding the negligence of the jockey and that inasmuch as the persons who were privately examined by Dr. Font Suárez were not summoned to appear at the investigation, the appellee was deprived of an opportunity to confront and cross-examine them and defend himself properly. It is obvious that the jury did not comply with the minimum requisite provided by subdivision H of Rule 96, *supra,* as the same has been construed and applied in the above-mentioned cases, and consequently the lower court committed no error in deciding as it did.

The last error assigned is the imposition of costs and attorney's fees. The former are mandatory under § 327 of the Code of Civil Procedure, as amended by Act No. 94 of 1937 (Laws of 1936–37, p. 229), and the latter are discretionary, the imposition thereof depending on the obstinacy of the defeated party. In view of the questions involved in the case at bar, we are of the opinion that the appellants were not obstinate in defending the suit.

The judgment appealed from is modified by striking the award of $50 as attorney's fees, and as so modified, the judgment is affirmed.